UNITED STATES of America,

v.

Raymond HUNTER, Defendant.

UNITED STATES of America,

v.

Albert RAYMOND, Defendant.

UNITED STATES of America,

v.

William DeLOACH, Sr., Defendant.

UNITED STATES of America,

v.

Linda F. EWING, Defendant.

Crim. Nos. 2008-68, 800-71, 904-72 and 981-73.

United States District Court, District of Columbia.

Nov. 19, 1974.

See also, D.C., 327 F.Supp. 641.

Jean F. Dwyer, Washington, D. C., for Albert Raymond.

John G. Perazich, Washington, D. C., for Ewing.

James A. Treanor, III, Washington, D. C., for DeLoach.

Matthew W. Black, Jr., Washington, D. C., for Hunter.

BAZELON, Chief Judge:

Since enactment of the Criminal Justice Act, I have taken the position that the amount of compensation awarded appointed counsel in a case which warrants a fee in excess of the statutory limit should not ordinarily be computed at maximum statutory rates. *E.g.*, United States v. Thompson, 361 F.Supp. 879, 886–887 (D.D.C.1973); United States v. Harper, 311 F.Supp. 1072, 1073 (D.D.C. 1970); United States v. Hanrahan, 260 F.Supp. 728 (D.D.C.1966). *See also* United States v. Dodge, 260 F.Supp. 929 (S.D.N.Y.1966) (Lumbard, C. J.); Plan for Implementing the Criminal Justice Act, 1st Cir. Rules, App. § (d); 5th Cir. R. 7(IV)(1); Plan to Implement the Criminal Justice Act, 8th Cir. Rules, App. § VI(2). Consistent with what I understand to be the practice of other circuits, I have also indicated that I would consider approving a fee computed at maximum statutory rates in a case involving extraordinary circumstances. United States v. Thompson, *supra*, 361 F.Supp. at 886–887; United States v. Harper, *supra*, 311 F.Supp. at 1073 n.9.[1] In each of the cases before me, the district judge has found that counsel rendered services in "extended or complex representation" and that the circumstances of each case were extraordinary so as to require excess compensation computed at maximum statutory rates in

---

1. I am aware of three reported cases where chief circuit judges have approved fees based upon maximum statutory rates. United States v. James, 301 F.Supp. 107, 114–116, 118 (W.D.Tex.1969) (approved by Chief Judge Brown); United States v. Ursini, 296 F.Supp. 1155 (D.Conn.1968) (approved by Chief Judge Lumbard); United States v. Pope, 251 F.Supp. 234 (D.Neb.1966) (approved by Chief Judge Vogel).

order to provide appointed counsel "fair compensation" within the meaning of the act. 18 U.S.C. § 3006A(d)(3). I must therefore decide whether these determinations are consistent with the statutory criteria governing excess compensation for attorneys appointed to represent indigent defendants in a federal criminal case.

 Preliminarily, I find that each of the applications for excess compensation is sufficiently detailed to permit the trial judge and me to conclude that the professional services involved in these felony cases were "reasonably expended" during the course of the representation. See United States v. Thompson, *supra*, 361 F.Supp. at 884; United States v. Naples, 266 F.Supp. 608 (D.D.C.1967). I have also concluded that, in each of these cases, the trial court's conclusion that these attorneys were involved in "extended or complex" representation is clearly correct and that, in consequence, these attorneys are entitled to "fair compensation" without regard to the usual statutory limit of $1,000. Accordingly, I turn to the circumstances set forth by the district judge in each of these cases in order to determine whether I should approve compensation computed at maximum statutory rates.

In *Hunter*, the trial judge's helpful memorandum sets forth the pertinent circumstances:

"The indictment in this case charged defendant with raping three women on different dates and related offenses. The need to grant a severance seemed apparent, and this was done. The prosecution chose to proceed on counts three and four in the first trial which was held on April 14 and 15, 1971, subsequent to a lengthy hearing on a motion to suppress certain identification evidence held on April 12, 1971. The defendant was acquitted.

The rape charge and related offenses embodied in counts five, six and seven were the subject of the second complete trial. This was a two-day matter which followed on the heels of a four-hour hearing held on a motion to suppress identification testimony. This completely separate trial resulted in a hung jury. Later, a second motion to dismiss was heard and granted by [a different district judge].

Each trial was well conducted by counsel, and his tactics and effectiveness clearly reflected thorough investigation and preparation. It appears that if the charges were contained in separate indictments no question would arise as to the propriety of maximum compensation as to each.

In these circumstances it appears that these separate trials amply support the claim of extended and complex litigation when compensation is sought under a single voucher only because the charges were contained in a single indictment with one criminal number for purposes of identification. Also, I believe that in this case the amount of payment requested is necessary to provide fair compensation."

The trial judge approved counsel's application in the total amount of $2,165, representing payment at $30 per hour for each of the 35 hours of "in court" time expended during the course of the representation, and payment at $20 per hour for each of the 55.75 hours involved in "out of court" preparation.

In *Raymond*, the trial judge approved counsel's application at maximum statutory rates and filed the following memorandum:

"The application of [counsel] for compensation in the amount of $2,810 is justified in my opinion because of the circumstances of the case and the length of the trial. This case involved voiceprint testimony, and it was a case of first impression in the Federal courts. [Counsel] did extensive research, both of a legal and of a scientific nature and obtained the services of an expert in the field to testify for the defense.

The record reflects that the trial lasted seven days during which 48.25 hours were logged in Court. Other

Court time was spent on pretrial motions and status hearings.

Out of Court research time spent in view of the complexity of the issue and the need for studying scientific articles prepared by witnesses and others in this field is reasonable.

Payment is recommended."[2]

In approving counsel's application in *DeLoach,* the trial judge stated:

"I attach hereto a voucher of [counsel] for defendant William L. DeLoach, Sr., indicted in the above numbered criminal action and charged with conspiracy, first degree murder and carrying a dangerous weapon. After a trial of 8 days, defendant DeLoach was found guilty of the lesser included offense of second degree murder. This was a protracted and difficult case. Defendant's counsel * * *, a former Assistant U. S. Attorney, exhibited excellent ability and represent his client in the best tradition of the profession. As a trial judge, I observed [counsel's] work from the beginning when he was assigned to represent the defendant throughout the preliminary procedures and the trial. I found him to be, as I stated, an excellent counsel for his client.

[Counsel] has presented his voucher in the sum of $2,620.65. I have approved that amount and I certify it to you for your consideration and recommend your approval."[3]

Counsel for Ewing submitted an application for compensation in the amount of $2,469 which included $20 for out of pocket expenses incurred during the representation. The trial judge approved the application in full, endorsing it as follows:

"I recommend payment to [counsel] for both out of and in court time, a total of $2,469. The case involved serious conspiracy and substantive charges on which [counsel] secured an acquittal for his client. The case took approximately 10 days to try."

I am well aware of the frustrations involved in the administration of the excess compensation provision of the Criminal Justice Act. When Congress has provided for "fair compensation" to those attorneys called upon to represent indigent criminal defendants, the courts have an obligation to administer the statute promptly and fairly. The delay necessarily involved as I review such applications and attempt to articulate standards to guide practicing attorneys and busy trial judges is a constant source of concern to me and carries with it the potential for serious economic prejudice to conscientious counsel.[4] As the courts gained experience with the statute, I had hoped that sufficiently clear standards would emerge, either from the Judicial Conference of the United States pursuant to its rule-making authority, 18 U.S.C. § 3006A(i), or from the decided cases. Regrettably, this has not yet happened. See United States v. Thompson, *supra,* 361 F.Supp. at 893–895.

■ So again, without such guidance, I face this recurring and vexing problem in these cases. In a further effort to

---

2. See United States v. Raymond, 337 F.Supp. 641 (D.D.C.1972), rev'd, App.Div., 498 F.2d 741 (June 6, 1974), for a discussion of the evidentiary issues to which the trial court's memorandum refers.

3. The trial judge prepared his memorandum before I released my opinion in United States v. Thompson, *supra.* I returned the application for reconsideration in light of that opinion. Upon reconsideration, the trial judge has reaffirmed his previous conclusion that payment at maximum statutory rates is necessary to provide "fair compensation."

4. In an effort to ameliorate such economic hardship while these cases remain under advisement, I will direct the Clerk to forward each voucher for a partial payment in the amount of $1,000, the maximum compensation permissible under the statute without my approval. Thereafter, when final disposition of these cases is made, I will certify such additional amounts as are necessary to afford "fair compensation" under the appropriate criteria and forward the applications for payment with a request for expeditious consideration by the Administrative Office of the United States Courts.

resolve this problem, I shall seek the aid of the bar which, after all, is most directly affected. Accordingly, I will request each attorney-applicant to submit a memorandum dealing with the sole issue which I see in these cases: whether I should approve excess compensation at maximum statutory rates under the circumstances set forth by the respective district judges. Since disposition of the issues posed by these cases will have broad significance to the entire bar of this circuit, I will also direct the Clerk to serve copies of this opinion upon the president of each bar organization in this jurisdiction, and leave is hereby granted to each of these organizations to submit a memorandum *amicus curiae* if it be so advised.

I am also mindful that the public funds available for compensation are limited and that any disposition must be consistent with the statute which Congress has enacted. The law provides that payments under the Criminal Justice Act "shall be made under the supervision of the Director of the Administrative Office of the United States Courts." 18 U.S.C. § 3006A(j). Consistent with his statutory responsibilities, the Director has occasionally taken the position that a payment, even one authorized by a chief circuit judge, was prohibited by the terms of the act. *E. g.*, United States v. Aadal, 282 F.Supp. 664, 666 (S.D.N.Y.1968). Moreover, the Director is in a unique position to know of the practices of other chief circuit judges and his aid as *amicus curiae* would thus be of great assistance in the disposition of these cases. I will, therefore, direct the Clerk to forward a copy of this opinion to the Director of the Administrative Office of the United States Courts who is hereby invited and urged to file a memorandum as *amicus curiae* in these cases.

In seeking this assistance, it should be clear that I am prepared to reexamine my prior dispositions of such excess compensation applications in an effort to develop guidelines which will allow expeditious disposition of excess compensation requests in this circuit.

Any such guidelines, however, must be consistent with the Criminal Justice Act and the legislative will and thus it may be necessary to reconsider the proposition that Congress did not intend excess compensation ordinarily to be computed at maximum statutory rates; to examine the role which Congress intended the chief circuit judge to have in applications, such as those before me, where the trial judge has articulated reasons for a particular fee award; or to consider whether some rule of thumb approach is consistent with the legislative intent. Full and informed deliberation of these and other considerations may make possible the development of sufficient standards so that future applications may be reviewed promptly and in a manner consistent with the statutory purpose and legislative intent.

These cases are held in abeyance pending receipt and consideration of the memoranda of counsel and *amici curiae*. Such memoranda should be filed within thirty days from the date of this opinion. The Clerk is directed to serve copies of this opinion as provided in the text.

So ordered.