UNITED STATES of America

v.

**Samir HERBAWI, et al., (Mansour Herbawi) Defendants.**

**No. 95–CR–6040L.**

United States District Court, W.D. New York.

Jan. 24, 1996.

Bradley E. Tyler, Assistant United States Attorney, Rochester, New York, for plaintiff.

Karl F. Salzer, Rochester, New York, for defendants.

## DECISION AND ORDER

FELDMAN, United States Magistrate Judge.

By motion filed December 18, 1995, Karl F. Salzer, Esq. seeks to be relieved as counsel for defendant Mansour Herbawi, or in the alternative, to be appointed as counsel for Herbawi pursuant to the Criminal Justice Act (CJA), 18 U.S.C. § 3006A. The government responded to the defendant's motion by letter dated January 17, 1996.[1] During oral argument, the government stated it would take no position as to whether defense counsel should be permitted to withdraw, but requested that the court convene a hearing on the issue of whether the defendant was eligible for assignment of counsel under the CJA.

### THE WITHDRAWAL OF RETAINED COUNSEL

It is not surprising that the withdrawal of retained criminal counsel after a general notice of appearance has been entered is not viewed with favor by the courts. In order to protect the public and the defendant's right to a speedy trial and to avoid unnecessarily prolonging a determination as to an accused's innocence or guilt, criminal cases move at an accelerated pace. The delays necessary to allow substituted counsel an adequate opportunity to familiarize themselves with their client, investigate the facts of the case, explore possible defenses to the charges and generally "get up to speed" on the proceedings can frustrate efforts to achieve the prompt and efficient administration of justice in criminal cases. The substitution of counsel in a complicated, multiple defendant criminal case not only exacerbates the delay but also adversely impacts the speedy trial rights of defendants who are properly joined for

---

1. Although the defendant's Notice of Motion was provided to the government, this Court, relying on *United States v. Thompson*, 361 F.Supp. 879, 888, n. 20 (D.D.C.1973), *vacated in part, aff'd in part without opinion*, 489 F.2d 1273 (D.C.Cir. 1974), permitted defense counsel to file his supporting papers under seal. Although the government's response "queries the basis for the sealing", it has not cited any authority that would contradict the procedure adopted by the district court in *Thompson* in determining motions of this nature. During oral argument of the instant motion, government counsel represented that it has not started, nor does it intend to start any proceeding related to the source of Mr. Salzer's retainer and has not subpoenaed nor sought any documents from Mr. Salzer or his law firm relating to the retainer or source of legal fees paid to date by the defendant. Accordingly, I find the cases cited by the government in their letter response regarding the sealing issue to be factually and legally distinguishable.

trial but whose lawyers are not moving to withdraw.

The withdrawal of retained counsel solely because the retained client fails to honor a fee agreement has been criticized. "The Criminal Justice Act is not a form of federal fee insurance guaranteeing payment to counsel for the failure of his retained client to honor a fee agreement. (citation omitted). The civil courts are fully capable of providing the attorney with appropriate redress in such circumstances." *United States v. Thompson,* 361 F.Supp. 879, 887 (D.D.C.1973) *vacated in part, aff'd in part without opinion,* 489 F.2d 1273 (D.C.Cir.1974). Where a substantial partial retainer is paid to private defense counsel and thereafter exhausted, a subsequent motion by private counsel to be relieved for failure of the defendant to pay the remainder of the agreed upon fee creates an additional and unfair burden on the limited resources available to the poor pursuant to the CJA. A motion made to withdraw after the depletion of the defendant's partial, but not insubstantial retainer, eliminates the availability of assets that "otherwise would have been available to help defray the expense of court-appointed counsel". *United States v. Rodriguez–Baquero,* 660 F.Supp. 259, 261 (D.Me.1987).

■ Despite the understandable reluctance of courts to allow retained defense counsel to withdraw "mid-stream", there is no bright line litmus test that can be universally applied to each situation. Indeed, the CJA specifically contemplates the occasional need for retained counsel to withdraw upon the indigence of the defendant by providing that "[i]f at any stage of the proceedings, including an appeal, the United States magistrate or the court finds that the person is financially unable to pay counsel who he had retained, it may appoint counsel". 18 U.S.C. § 3006A(c). While the defendant's default in paying the balance due on a fee agreement may not, in and of itself, ordinarily be sufficient to warrant appointment under the CJA, I find the circumstances of Mr. Salzer's application sufficiently unusual and extenuating as to justify relief.

The original indictment in this matter was returned by the Grand Jury on June 28, 1995 and charged Mansour Herbawi and others with conspiring to distribute cocaine in violation of Title 21 U.S.C. 846. The original indictment contained a second count charging a continuing criminal enterprise (CCE), but Mansour Herbawi was not named as a defendant in Count II. Mr. Salzer was formally retained by Mansour Herbawi on July 18, 1995. The retainer agreement, filed under seal, reflects that Mr. Salzer was retained to represent Mr. Herbawi on the "Indictment charging conspiracy to distribute and sell cocaine". No other charges are mentioned.

Soon after the original indictment was returned, the government made defense counsel aware that a superseding indictment would be presented to the grand jury. Motion practice was adjourned at the request of defense counsel so that any motions filed could be addressed to the anticipated superseding charges. In the interim, however, the government provided voluntary discovery to defense counsel. The voluntary discovery material was, by all accounts, voluminous. Several hundred audio and video tapes were generated by law enforcement in their investigation of the defendants, recording hundreds of conversations, many of them in the Arabic language. In addition, the government sought detention of various defendants, including Mansour Herbawi, and extended litigation, including appeals to the district court, occurred over the bail status of each defendant.

On November 18, 1995, the grand jury returned a superseding indictment. The superseding indictment significantly enlarged the scope of the criminal charges alleged in the original indictment. As to Mansour Herbawi, the original indictment alleged one offense, a drug conspiracy. The superseding indictment charged him with 14 different federal criminal offenses, including racketeering in violation of 18 U.S.C. § 1962(c). The acts of racketeering were, according to the allegations in the superseding indictment, conducted by a large criminal enterprise, of which Mansour Herbawi was alleged to be a member. According to the grand jury, the enterprise (1) engaged in a "myriad of fraudulent activities involving the USDA food stamp program"; (2) engaged in a "myriad of fraud-

ulent activities involving the WIC program"; (3) procured and distributed "large quantities of narcotics"; (4) trafficked in "large quantities of firearms, including semi-automatic rifles and handguns"; (5) sold, exchanged and transferred counterfeit money, and (6) protected the activities of the enterprise by "engaging in acts of violence". Aside from racketeering, Mansour Herbawi was additionally charged in the superseding indictment with money laundering conspiracy, money laundering, food stamp trafficking, narcotics conspiracy and narcotics distribution. Mansour Herbawi was also alleged in the superseding indictment to be the owner of property subject to forfeiture pursuant to 18 U.S.C. § 982.

In sum, the charges alleged in the original indictment pale in comparison to the charges now alleged in the superseding indictment. In July, 1995, Mr. Salzer was retained by Mansour Herbawi to represent the defendant on a single count charging a narcotics offense. Four months later, Mr. Salzer represented Mr. Herbawi on a 51 count indictment charging participation in a criminal enterprise involved in what the government refers to as a "myriad" of conspiratorial and substantive criminal activities. While the indictment number may remain the same, there is little other similarity between the original charges against Mansour Herbawi and the charges alleged in the superseding indictment. Simply put, the case for which Mr. Salzer was retained is no longer the case in which he finds himself representing Mansour Herbawi. In light of these unusual circumstances, I find that the inability of Mr. Herbawi to meet the terms of the original retainer agreement, coupled with the enormous complexity of the superseding indictment, justifies granting Mr. Salzer's request to be relieved as retained counsel for the defendant.

## APPOINTMENT OF COUNSEL FOR MANSOUR HERBAWI

Having determined that Mr. Salzer may withdraw as retained counsel for Mansour Herbawi, there remains to be decided the defendant's request for appointed counsel. Mr. Salzer has indicated a willingness to continue to represent Mr. Herbawi as appointed counsel under the CJA. Mr. Salzer is a highly respected and experienced criminal defense attorney who has assisted the judges of this court for many years by accepting CJA assignments. The defendant has not requested different counsel and, given the complex nature of this case and the volume of discovery produced by the government, continuity of counsel would be the most efficient and least disruptive course of action. Accordingly, should Mansour Herbawi qualify for assigned counsel, this Court is inclined to appoint Mr. Salzer as his attorney.

■■■ The government has requested a "hearing" to determine whether the defendant qualifies for assigned counsel. The burden to demonstrate eligibility for assigned counsel is on the defendant. *United States v. Peister*, 631 F.2d 658, 662 (10th Cir.1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). However, experience indicates a full blown "hearing" on the issue is rarely required and completion of CJA form 23 affidavit ordinarily suffices.[2] However, the government is entitled to be heard on this issue, *see United States v. Harris*, 707 F.2d 653 (2d Cir.), *cert. denied*, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983), and the nature of the proceeding to determine the defendant's eligibility for CJA counsel need not be determined here.

The defendant's application for assigned counsel will be heard on Friday, February 2, 1996 at 2:00 p.m.. Effective January 23, 1996, Karl Salzer, Esq. Is provisionally appointed pursuant to 18 U.S.C. § 3006A to represent Mansour Herbawi pending determination of the defendant's application for assigned counsel. Should this Court determine that Mansour Herbawi does *not* qualify for assigned counsel, the defendant shall be

---

2. The standard for appointment of counsel is "something less than indigency or destitution" and the appointing court should properly consider the economic realities, including the cost of a criminal defense and the cost of providing for the defendant and his dependents. *United States v. Harris*, 707 F.2d 653, 660–661 (2d Cir.), *cert. denied*, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983).

ordered to reimburse the government for the costs of this provisional appointment pursuant to 18 U.S.C. § 3006A(f).

SO ORDERED.