UNITED STATES of America

v.

Raymond HUNTER, Defendant.

UNITED STATES of America

v.

Albert RAYMOND, Defendant.

UNITED STATES of America

v.

William DeLOACH, Sr., Defendant.

UNITED STATES of America

v.

Linda F. EWING, Defendant.

Crim. Nos. 2008–68, 800–71, 904–72 and 981–73.

United States District Court, District of Columbia.

July 31, 1975.

BAZELON, Chief Judge:

When these applications for excess compensation pursuant to the Criminal Justice Act, as amended, 18 U.S.C. § 3006A(d), were first before me, I concluded that each attorney had rendered "extended or complex" representation and that each of the applications were sufficiently detailed to permit a finding that the services provided to the indigent defendants in these felony cases were "reasonably expended" in the course of counsel's representation of the indigent defendant. United States v. Hunter, 385 F.Supp. 358 (D.D.C.1974). In each of these cases, the trial judge approved vouchers submitted by appointed counsel in amounts exceeding the statutory ceiling of $1,000 for a felony case, and in each case the trial judge concluded that payment at the maximum statutory rates of $30 per hour for in-court time and $20 per hour for out-of-court time was necessary to provide "fair compensation." 18 U.S.C. § 3006A(d). Since I had previously held that excess compensation is not ordinarily to be computed at maximum rates absent a showing of

"exceptional circumstances,"[1] I was troubled by these vouchers, particularly so since there appeared to be no ascertainable standard to guide the trial judge's initial determination nor my approval function under the statute. I therefore held the applications in abeyance and requested memoranda on this point from counsel involved in the cases before me, and I also invited the various bar organizations in the District of Columbia and the Director of the Administrative Office of the United States Courts to aid in the resolution of this important and difficult problem by submitting memoranda as *amicus curiae*. Memoranda have been submitted by several of the attorney-applicants and by various bar organizations as *amici curiae*. I am particularly grateful for the helpful memoranda submitted by the Bar Association of the District of Columbia, the District of Columbia Bar, and the National Legal Aid and Defender Association. The Administrative Office of the United States Courts elected not to respond to my invitation to participate in these cases as *amicus curiae*.[2]

The attorney-applicants and amici curiae ask me to hold that, when appropriately certified by the trial judge, "fair compensation" for "extended or complex" representation under the amended act may be computed on the basis of maximum hourly rates without regard to a separate showing of "exceptional circumstances." This construction, it is contended, accords with the intention of Congress which led to the 1970 amendments to the Criminal Justice Act and furthers the statutory goal of providing indigent defendants in the federal courts with adequate and effective representation by counsel. Initially, I adopted a contrary construction under the original statute. United States v. Hanrahan, 260 F.Supp. 728 (D.D.C.1966). I adhered to that construction in United States v. Thompson, 361 F.Supp. 879, 886–887 (D.D.C.1973), the only case which I have decided under the amended act. As the attorney-applicants and *amici* see it, *Thompson* is at odds with the legislative purposes of the 1970 amendments and results in substantial delay in the processing of excess compensation applications which is incompatible with the statutory scheme. Finally, it is argued that the "exceptional circumstances" standard results in at least the appearance of, if not the fact of, arbitrary reductions in the compensation found by the trial judge to have been necessary to afford "fair compensation" in a particular case.

These are powerful arguments involving a statute which is at the heart of our goal of providing competent counsel for indigents. I have accordingly pondered the memoranda before me with care and, for reasons which follow, I have concluded to approve each of the applications in the full amount as certified by the respective trial judges.

I begin with the wording of the statute. As amended, the act provides that counsel appointed to represent an indigent defendant in a felony case shall be compensated at rates not to exceed $30 per hour for in-court time and $20 per hour for out-of-court time subject to a ceiling of $1,000. 18 U.S.C. § 3006A(d)(1), (2). Payment in excess of the statutory limit may be authorized

---

1. United States v. Harper, 311 F.Supp. 1072, 1073 (D.D.C.1970); United States v. Hanrahan, 260 F.Supp. 728 (D.D.C.1970). Both *Harper* and *Hanrahan* were decided under the 1966 act which required a finding of "extraordinary circumstances" before *any* excess compensation would be approved. 18 U.S.C. § 3006A(d) (1966). In 1970, that requirement was deleted. 18 U.S.C. § 3006A(d)(3) (1970). Nevertheless, I indicated that the "extraordinary circumstances" standard would still be applicable in cases such as the ones before me where the trial judge computed excess compensation at maximum hourly rates. United States v. Thompson, 361 F.Supp. 879, 886–887 (D.D.C. 1973).

2. The Director of the Administrative Office of the United States Courts is charged with administration of the Criminal Justice Act, 18 U.S.C. § 3006A(j). His views on the proper construction of the statute are entitled to deference, cf. Udall v. Tallman, 380 U.S. 1, 4, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), particularly in light of his intimate knowledge of the practices followed in other circuits.

"for extended or complex representation" when the trial judge certifies that "the amount of the excess payment is necessary to provide fair compensation" and the chief circuit judge "approve[s]" the payment. 18 U.S.C. § 3006A(d)(3). The 1970 amendments expressly removed the previously required showing of "extraordinary circumstances" as a pre-condition to excess compensation. There is substantial support in the legislative materials to support the conclusion that Congress intended to increase the compensation available to appointed counsel pursuant to the statute, and to ease the eligibility requirements for excess compensation. S.Rep. No. 91–790, 91st Cong., 2d Sess. at 7, 14–15 (1970); H.R. Rep. No. 91–1546, 91st Cong., 2d Sess. at 10–11 (1970), U.S.Code Cong. & Admin. News 1970, p. 3982. I recognized as much in United States v. Thompson, *supra*, 361 F.Supp. at 882–887, but nevertheless concluded that the "exceptional circumstances" standard should be retained for excess compensation payments which were calculated at maximum hourly rates. 361 F.Supp. at 886–887. While that standard may have been appropriate under the original act with its "extraordinary circumstances" provision, further reflection has persuaded me that it has no place in administration of the excess compensation provision of the amended statute.

Several reasons lead me to this conclusion. First, the "extraordinary circumstances" test is not compelled by the language of the amended statute, and there is nothing in the act itself or the legislative history which requires a holding that "fair compensation" in a given case may not be fixed at maximum hourly rates.[3] Continued adherence to the "extraordinary circumstances" requirement, at least in the absence of promulgated criteria by those charged with administration and implementation of the Criminal Justice Act,[4] cannot therefore be justified by ordinary canons of statutory construction.

Second, this circuit's experience with the "extraordinary circumstances" standard is now sufficient to enable me to conclude that, as the attorney-applicants and *amici* argue, continued adherence to that test may actually hinder administration of the act and inadvertently thwart the overriding legislative goal of providing competent legal services to eligible criminal defendants in the federal courts. It is fair to say that neither counsel, the trial bench nor I have a focused notion of what kind of a showing will satisfy the "extraordinary circumstances" standard. Without enunciated criteria, appointed counsel face lengthy delays as trial judges and I grapple with excess compensation applications in an effort fairly to administer

---

**3.** Several of the memoranda argue that in the usual case where the amount of compensation does not exceed the statutory ceiling, district judges in this circuit routinely award compensation at maximum hourly rates. A recently issued study, while silent on the practices of our District Court, suggests that this may not necessarily be true in the Superior Court of the District of Columbia. See Report on Criminal Defense Services in the District of Columbia by the Joint Committee on the Judicial Conference of the D.C. Circuit and the D.C. Bar (Unified) at 36–43 (1975) (hereinafter cited as "Joint Report").

**4.** The Director of the Administrative Office of the United States Courts is charged with supervision of payments made pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(j), and the Judicial Conference of the United States "may, from time to time, issue rules and regulations governing the operation of plans formulated" under the statute. 18 U.S.C. § 3006A(g). Finally, each circuit is required to have a plan for implementation of the act. 18 U.S.C. § 3006A(a). A different result might be reached were any of these responsible officials or bodies to promulgate a different standard for administration of the excess compensation provision. Compare Plan for Implementation of the Criminal Justice Act, 1st Cir. Rules, App. at A(d), which provides: "In addition, the court notes that only in the *most extraordinary case* will the chief judge consider a request for fees beyond the statutory maximum." (Emphasis added). I am unaware of any reported opinion by the chief judge of the First Circuit applying that circuit's "most extraordinary case" standard, and I am not informed as to how that standard is applied in practice. In any event, there is no comparable requirement in this circuit's implementation plan.

the statute. I am now persuaded that a chief cause of such delay is the difficulty encountered in the effort to apply an essentially standardless standard. An attorney faced with such a delay may understandably conclude that, despite the promise of "fair compensation" in an "extended or complex" case, the Criminal Justice Act instead imposes an unfair and prejudicial economic burden. Equally important, reduction of a fee award found by a trial judge to be necessary to afford an appointed attorney "fair compensation" which is unaccompanied by appropriate explanation necessarily smacks of standardless and perhaps arbitrary judicial action.

Finally, it is argued that retention of the "extraordinary circumstances" standard actually impedes the legislative goal or furnishing each indigent defendant with a competent attorney. This is so, the attorney-applicants and *amici* suggest, because appointed counsel, aware of the "extraordinary circumstances" test, will be reluctant to expend the time really necessary to provide full defense services if they know that they may not be compensated.[5] Of course, the modest compensation provided under the statute is not the guiding star for many dedicated attorneys who will always represent their appointed clients zealously regardless of the demand upon their time or the availability of publicly-funded compensation. It would, however, be naive to assume that such compensation is not a factor for some attorneys, particularly those who practice alone or in small firms and are therefore least able to absorb the financial impact of an extended or complex case.[6] The statute must be construed and administered in a way which will encourage competent and dedicated attorneys to become involved in the federal criminal courts for, if caseloads and statistics are any guide, our need for such lawyers will continue in future years. There is now evidence that, among other factors, insistence on the "extraordinary circumstances" requirement actually deters competent counsel from accepting appointments in extended or complex criminal cases, lowers the quality of the defense services provided to individual defendants,[7] and runs a risk of driving the experienced practitioner from the criminal courts while discouraging young attorneys from pursuing a career in criminal litigation.[8] A judge-made standard

---

5. See Joint Report at 44–46.

6. I have been particularly concerned about this prejudice to appointed counsel, and when these cases were first before me I endeavored to ameliorate the effects of delay while the difficult issues were briefed and considered by authorizing payment of the $1,000 ceiling pending disposition of these applications for excess compensation.

7. A recent study on criminal defense services in the District of Columbia revealed that eleven attorneys practicing in the local courts "are frequently mentioned by judges and attorneys alike as being either incompetent or uninterested and overloaded with cases . . . ." Report at 11. I find it astonishing that one of these lawyers carried an appointed caseload of 156 felonies and 50 serious misdemeanors while another accepted appointment in 113 felonies and 86 serious misdemeanors. *Ibid.* Obviously, no attorney can adequately represent such a staggering number of defendants adequately. Yet, it appears that while local judges and others know that these attorneys cannot and do not properly represent their clients, there "was a frank acknowledgement on the part of many [local trial judges] that they often had no alternative but to appoint attorneys they considered incompetent to misdemeanor cases, either because there were too many cases and too few attorneys or because of the difficulty of refusing appointments to attorneys sitting before them in arraignment court." Report at 10. While there is as yet no evidence that our District Court suffers from the same dilemma, the problem is one to be avoided at the outset. To the extent that the "extraordinary circumstances" standard tends to promote such a situation, that standard ill serves the legislative purpose which prompted enactment of the 1970 amendments to the Criminal Justice Act.

8. The practice of law has become increasingly specialized, so much so that some have become concerned with the lack of necessary skills and training on the part of some attorneys appearing in the trial and appellate courts. The law schools have made great strides in the field of clinical legal education in recent years and are now graduating lawyers already exposed to the field of litigation. By the same token, young attorneys employed by

that reaps such consequences is not faithful to the spirit and purpose of the Criminal Justice Act.

■ For these reasons, I now hold that when appropriately certified by the trial judge on an adequately detailed application, "fair compensation" for "extended or complex" representation may be computed on the basis of maximum hourly rates without regard to a separate showing of "exceptional circumstances," provided that the trial judge separately articulates, as have the judges in these cases, the reasons that have prompted the conclusion that such payment is necessary to afford appointed counsel "fair compensation" under the circumstances of the particular case. Thus I agree with the position urged by several of the attorney-applicants and *amici* that the sole standard is the "fair compensation" standard set forth in the amended statute. To the extent that United States v. Thompson, 361 F.Supp. 879, 886–887 (D.D.C.1973), is inconsistent

with this construction of the amended act, that case will no longer be followed.

■ What will constitute "fair compensation" will necessarily turn on the circumstances of each particular case. That standard, however, at least turns the courts in this jurisdiction toward familiar ground for many federal statutes require judges to set or approve "reasonable" attorney's fees. While the "fair compensation" standard and the statutory limit on the hourly compensation available even at maximum rates will not necessarily result in a "reasonable" fee in all cases, it seems to me that the same general criteria can be applied by a trial judge fully familiar with the complexities of a particular case and the services rendered by the attorney seeking the excess compensation. I shall continue to review such applications for completeness[9] and to satisfy myself that the case involves "extended or complex" representation, the statutory precondition for the award of any compensation in excess of the $1,000 limitation.[10] If,

the public prosecutors' offices gain experience and skill in the art of advocacy and not infrequently leave such positions after a few years to engage in the private practice of the law. If the promise of the Sixth Amendment and the Criminal Justice Act is ever to become reality, it is lawyers like these who must be attracted to a career in the criminal law. It would be inconsistent with the hope and the intent of Congress to construe the act in a way that would unduly deter such attorneys from coming to, or remaining in, the federal criminal courts.

9. See, *e. g.*, United States v. Thompson, 361 F.Supp. 879, 884 (D.D.C.1973); United States v. Naples, 266 F.Supp. 608 (D.D.C.1967).

10. One of the *amici*, the District of Columbia Bar, asks me to hold that counsel is entitled to be compensated at maximum statutory rates for every hour "reasonably expended" on the case. In support of this argument, the District of Columbia Bar argues that it is unfair and illogical to draw a line at $1,000 and it suggests that Congress contemplated that maximum hourly rates would be the usual rate of compensation in a metropolitan area such as the District of Columbia. The problem with this argument is that the statute expressly requires a finding that a case was "extended or complex" before excess compensation is permitted. Had Congress intended the result urged by the District of Columbia Bar, it would merely have provided that services be

"reasonably expended" and it would have eliminated the statutory ceiling. My holding that the excess compensation section permits a "fair compensation" to be calculated on the basis of maximum hourly rates if the trial court concludes that the circumstances of a given case call for that compensation does not mean that all such fee awards must be so calculated, nor does it augur a departure from the statutory requirement that a case meet the "extended or complex" test before *any* excess compensation is permissible. I rejected the argument now pressed by the District of Columbia Bar in United States v. Harper, 311 F.Supp. 1072 (D.D.C.1970), a case which arose under the original act, and I rejected that argument under the amended statute. United States v. Thompson, 361 F.Supp. 879, 883 (D.D.C.1973). In the latter case I said, "to say that the requirements for excess compensation have been eased is not to say that they have been abolished altogether." 361 F.Supp. at 883. I adhere to that construction of the statute. If Congress wishes to adopt the position now urged by the District of Columbia Bar, it can further amend the statute and delete the statutory ceiling and the "extended or complex representation" requirement now found in 18 U.S.C. § 3006A(d)(3). In the absence of such legislative action, I cannot read the present statute to allow payment at maximum hourly rates for every hour "reasonably expended" on a criminal appointment.

as in these cases, I find myself in agreement with the trial court on counsel's entitlement to excess compensation, I will ordinarily defer to the trial judge's articulated determination of what constitutes a "fair compensation" in a given case; at least where that determination is consistent with the statutory scheme and finds support in the record submitted for my consideration. In the cases before me, the trial judges, each of whom necessarily had a feel for the case and a first-hand basis to judge the scope and quality of the services rendered by counsel, concluded that "fair compensation" requires payment at maximum statutory rates. My independent review of the several applications before me affords no basis for disagreement with these findings, and I therefore approve each of the applications for excess compensation in the full amount certified by the District Court.