UNITED STATES of America

v.

**Ralph TUTINO et al., Applications by six attorneys (designated as Messrs. A, B, C, D, E and F for purposes of this opinion) for allowances under the Criminal Justice Act, Title 18, United States Code, § 3006A.**

No. 75 Cr. 1038.

United States District Court, S. D. New York.

May 13, 1976.

OPINION

IRVING BEN COOPER, District Judge.

We have before us six completed vouchers and accompanying affidavits submitted under the Criminal Justice Act (hereinafter occasionally referred to as "CJA" or "the Act") by court-appointed attorneys ("petitioners") from the CJA panel. Each attorney represented an indigent defendant in the trial of *United States v. Tutino, et al.* (75 Cr. 1038), which involved an 18-count indictment that named 17 defendants. Thirteen defendants eventually went to trial on November 10, 1975. Seven weeks later, on December 23, 1975, the jury returned its verdict, acquitting all defendants on all charges. While this is neither the time nor the place to indicate our impressions of the causes which induced the verdict, we are obliged to point out that the verdict was hardly due to the efforts of the majority of the attorneys for the defense. The amounts requested in these vouchers range from $8,580 to $11,185.

We have had occasion to express with great pride the deep satisfaction that has come to us from the professional service rendered by members of our profession who have undertaken, at considerable personal sacrifice the representation of indigent litigants. We have frequently done so over the years in open court and in remarks on file in the clerk's office.[1] Clearly their labors without stint brought forth exemplary professional performance, assured in large measure by an abiding sense of dedication to their calling. We certainly are not so fortunate here. In sharp contrast, we were disquieted by what confronts us in some of the instant applications for attorney's fees. Several of the petitioners lacked that degree of quality in their preparation and in-court performance to meet even minimal standards. As a trial judge for 36 years we feel qualified somewhat to make such an estimation.[2]

While thankfully it happens most infrequently in this Court, we devoutly trust that in the future we may be spared the

---

1. See, e. g., *United States ex rel. Robinson v. Vincent,* 371 F.Supp. 409, 423 (S.D.N.Y.1974); *Architectural League of N. Y. v. Bartos,* 404 F.Supp. 304, 316 (S.D.N.Y.1975).

2. "As the trial judge, this Court has a complete awareness of the services required to be rendered properly to protect the defendant's interests . . ." *United States v. Schuffman,* Dkt. # 75 Cr. 506 (S.D.N.Y., March 4, 1976) (Weinfeld, J.).

cheap antics, the unprofessional disregard of decency, the cruel onslaught on fair play with which many lawyers for the defense engaged. To make matters worse, most of them demonstrated conclusively that they did not have even a nodding acquaintance with humility. We were aghast. The problem remains with us: to hold the offenders to account if sufficient proof can be marshaled to make the charges "stick."

## I

We come now to a consideration of what is before us on the instant applications. It must be distinctly understood that our approach to the merits of the instant applications is in only one direction: the professional services rendered by each petitioner in behalf of his client-defendant. No other factor is being considered.

In 1964 Congress enacted the Criminal Justice Act [3] which set forth a system to provide effective legal assistance to persons financially unable to retain counsel. In brief, the provisions of the Act governing compensation of attorneys prescribed $15 per hour for time expended in court or before the United States Magistrate and $10 per hour for time spent out of court. The ceiling was $500 in felony cases and $300 in misdemeanor cases. Payment in excess of the maximum limits was authorized under the 1964 Act "in extraordinary circumstances" if necessary to provide "fair compensation" for "protracted representation." See generally, 1964 U.S.Code, Cong. and Adm.News, p. 2990 et seq.; Note, 9 A.L.R.Fed. 569, 573; Note, 41 N.Y.U.L.Rev. 758 (1966).

In 1970 Congress amended the Act, expanding its coverage,[4] providing for public defender services,[5] broadening the availability of public funds for defense services,[6] increasing the hourly rates of compensation to $30 per hour for "in-court" services and $20 per hour for "out-of-court" services,[7]

raising the statutory limit of counsel's compensation from $500 to $1,000 in felony cases and from $300 to $400 in misdemeanor cases,[8] and permitting compensation in excess of the limit under certain circumstances.

█ It is clear that the 1970 amendments significantly modified the Act. Nevertheless it may be fairly stated that the Act's underlying purpose, before and after modification, was the same: to assure competent representation of indigent defendants. *United States v. O'Clair*, 451 F.2d 485 (1st Cir. 1971); *Ray v. United States*, 367 F.2d 258 (8th Cir. 1966); *United States v. James*, 301 F.Supp. 107 (W.D.Tex. 1969). Moreover, several decisions make it plain that the fees allowable under the Act did not, and were not intended to, provide full compensation. *United States v. Thompson*, D.C., 361 F.Supp. 879, 887 (Bazelon, C. J.); *United States v. Hildebrandt*, 420 F.Supp. 476 (S.D.N.Y., 1975) (Mac-Mahon, J.). Further, the Act will not be construed "as a sort of hunting license on the part of lawyers to garner fees." *United States v. Schuffman*, Dkt. # 75 Cr. 506 (S.D.N.Y., March 4, 1976) (Weinfeld, J.).

The most important section of the amended Act (for present purposes) provides in substance:

> "*Payment in excess of any maximum amount* provided in paragraph (2) of this subsection may be made *for extended or complex representation* whenever the court in which the representation was rendered . . . certifies that the amount of the excess payment is necessary to *provide fair compensation* and the payment is approved by the chief judge of the circuit." 18 U.S.C. § 3006A(d)(3) (emphasis added)

In interpreting this section, two important threshold requirements have been established. Once these basic requirements

---

**3.** 18 U.S.C. § 3006A.

**4.** 18 U.S.C. § 3006A(a).

**5.** 18 U.S.C. § 3006A(h).

**6.** 18 U.S.C. § 3006A(e).

**7.** 18 U.S.C. § 3006A(d)(1).

**8.** 18 U.S.C. § 3006A(d)(2).

have been satisfied, there is a dearth of applicable guidelines, however, for determining "fair compensation."

The first threshold requirement is that the attorney seeking compensation must provide the trial Judge with an application sufficiently detailed to allow an exercise of informed judicial discretion. *United States v. Thompson, supra; United States v. Naples,* 266 F.Supp. 608 (D.D.C. 1967). Second, the trial Judge, when presented with a sufficient application in the appropriate case, must find that it involved "extended or complex" representation. *United States v. Thompson, supra.* Here, we have determined that the CJA vouchers are generally sufficient to permit the exercise of that discretion in an informed manner. Although we found that the trial issues were not particularly complex, they were in the main somewhat complicated and presented, on the facts and law applicable thereto, a sharp challenge to an advocate alert, informed and industrious. In addition, the trial was extended, lasting almost two months. Consequently, we hold the threshold criteria have been met.

Beyond these prerequisites however there is a paucity of decisional authority on standards for evaluating excess compensation. It is clear the Act did not intend that

> "trial judge[s] . . . sit as clericals, doing nothing more than multiplying hours times the statutory rate to arrive at a fee award; nor that the statutory limitation be waived in every case in which compensation for counsel's services, if computed at maximum hourly rates, would exceed statutory limits. The act still calls for an informed judicial determination based upon the facts of the individual case." *United States v. Thompson,* 361 F.Supp. at 884.

The few reported decisions which established standards for determining excess compensation were decided under the pre-1970 Act. However, the factors identified in those cases should be accorded weight in the present circumstances, particularly in the absence of more definitive statutory standards. In the present opinion we con-

sidered to a great extent the factors identified in *United States v. James, supra* wherein the following criteria were set out:

> "the amount, character and complexity of work required; responsibilities involved; manner in which duties were performed; knowledge, skill and judgment required of and used by counsel; professional standing of counsel as reflected by length of time at bar, experience acquired and reputation established. . . ." *Id.,* at 116.

See *United States v. Ursini,* 296 F.Supp. 1155 (D.Conn.1968); 9 A.L.R.Fed., at 598–99.

Within the *James* criteria, which underpin each of our dispositions below, we considered the response by the attorneys to legitimate requests by the Court for memoranda of law on significant issues that arose during trial. We feel compelled to note that for the most part our plea for memoranda went unheeded by defense counsel, some present petitioners included. The record reflects our chagrin:

> "I am forced to say that over and over and over again throughout this trial most of counsel left their clients high and dry without any memoranda of law, moving late when they should have moved early, just adding on things the last second which should have been thought out in advance with cogent arguments that were absent over and over and over again.

> "The dearth of memoranda, on behalf of a client—that is what the client has a right to expect from the lawyer—was repeatedly missing.

> I chafed at it, I mentioned it to counsel, I looked for help from them in regard to the law repeatedly and I found most of them wanting. They had nothing to offer, they had not thought it through, they jumped up at the last moment to say things that happened to come into their minds at that particular moment.

> The impression was poor, it was ragged, it was disheartening."

(Trial transcript at pp. 6687–6688)

We were certainly not the first to attach importance to the submission of memoranda during trial. In *Thompson,* Chief Judge Bazelon stated:

"The files and records, including counsel's detailed supporting memorandum, convincingly demonstrate that this case involved difficult factual and legal issues which were skillfully and thoroughly investigated, researched and presented. . . . Counsel devoted substantial time to preparing requests for instructions; to conducting interviews with potential witnesses and prosecuting attorneys; and to careful study of grand jury testimony, police reports, hospital records and to other matters." *Id.,* at 885–86.

We are compelled to state candidly that here such industriousness was absent almost entirely among defense counsel. In general, their lassitude and lack of preparation increased the burdens already present in such a large multi-defendant trial.

## II

Attorney A [9] requests a total of $8,580: $1,260 (63 hours at $20 per hour) for out-of-court services and $7,320 (244 hours at $30 per hour) for in-court services. Among many questionable amounts requested for out-of-court services, the most noteworthy are for lengthy conferences Mr. A claims he had with various people, time spent reviewing the trial record, researching motion papers, and conferring with co-counsel. In many instances, Mr. A's supporting affidavit fails to provide sufficiently descriptive detail of his services.

"Broad categories such as 'legal research' or 'interviews' or 'other services' cannot be found to have been 'reasonably expended' unless counsel's supporting memorandum furnishes sufficiently detailed

9. Mr. A represented the defendant Bailey named in the conspiracy count and one substantive count.

10. "Tr." followed by a number refers to the official transcript of this trial. "11/6 Tr." followed by a number refers to hearing held on Nov. 6, 1975 at the request of defendant Peek.

descriptions of the services to warrant that finding." *United States v. Thompson, supra* at 884.

Turning to Mr. A's in-court hours, we must give him due credit for submitting memoranda of law during trial. On the other hand, we are constrained to state that his performance at trial was unimpressive on the whole. His infrequent cross-examination of Government witnesses was poor; he did not help to focus on the important issues of the trial. (See, e. g., Tr. 1853–57; 2409–18; 2578–2611; 2617–18) [10]

■ Mr. A's advocacy was pedestrian; he is certainly not entitled to the $7,320 claimed for in-court services. In our estimation he is entitled *in toto* (combining both out-of-court and in-court services) to $5,500.

## III

Attorney B [11] requests a total amount of $8,580 [12]: $1,710 (85½ hours at $20 per hour) for out-of-court time, and $6,870 (229 hours at $30 per hour) for in-court time. With respect to the out-of-court hours, there are many vague requests for compensation: "Legal Research—Analyzing Indictment" (4 hours); "Analysis of Government's Bill of Particulars (6 hours); "Analysis of Indictments 75 Cr. 919, 75 Cr. 510, 75 Cr. 1038" (2 hours). Mr. B does not explain the meaning of these terms. If the terms signify something beyond reading the documents, we are left uncertain; if not something more difficult than reading, the requests for compensation most assuredly are excessive.

However, the most outrageous request ($800) for compensation in Mr. B's affidavit is the following:

11. Mr. B represented defendant Whittaker named in the conspiracy count and one substantive count.

12. This amount is identical to that requested by Mr. A.

"2. Reading and analyzing the following cases—as to the indictment filed

| | |
|---|---|
| U. S. v. Borelli | 336 F (2) 376 |
| U. S. v. Colon * | 426 F (2) 902 |
| U. S. v. Bufalino | 285 F (2) 408 |
| Blumenthal v. U. S. | 322 U.S. 539 |
| U. S. v. Aviles | 274 F (2) 179 |
| U. S. v. Aquico * | 310 F (2) 817 |
| U. S. v. Calabro | 449 F (2) 885 |
| U. S. v. Cirillo | 468 F (2) 1233 |
| U. S. v. Borelli | 336 F (2) 376 |
| U. S. v. Vega * | 468 F (2) 1234 |
| Katteakos v. U. S.* | 328 U.S. 790 |
| U. S. v. Dardi | 330 F (2) 316 |
| U. S. v. Crosby | 294 F (2) 928 |
| U. S. v. Calabra * | 449 F (2) 885 |
| U. S. v. Trumanti * | 513 F (2) 1087 |
| Berger v. U. S. | 295 U.S. 78 |
| U. S. v. Miley | 513 F (2) 1191 |
| U. S. v. Papadakis | 510 F (2) 287 |
| U. S. v. Cohen | 489 F (2) 945 |
| U. S. v. Bertolotti | |

    argued 7/14/75
    Decided 10/10/75
Nos. 1196–1224–1230–
    1231–1233–1234–
    1261
    September Term 1974—2nd Circuit 40 [hours]"

(B Affidavit, p.2)

We question how extensively Mr. B "analyzed" these decisions since several of them are improperly cited in his affidavit (see the asterisks inserted by us above). Moreover, *United States v. Borelli* and *United States v. Calabro* are twice cited by petitioner.

■ This Court will not compensate an appointed attorney for time expended in familiarizing himself with basic decisions in this Circuit with which even a novice lawyer should be familiar.

"[T]he bar has long required its members to maintain competence in the areas in which they are to practice, and it seems generally settled that an attorney may not properly charge his client for the time it takes the attorney to obtain general competence in a particular area of the law." *United States v. Thompson*, at 884 n. 12.

■ Addressing ourselves to Mr. B's request for compensation for in-court services, we feel compelled to note that his performance both as an officer of the Court and as advocate for his client left much to

be desired. He submitted neither memoranda of law nor requests to charge. His cross-examination of Government witnesses was infrequent, stumbling and ineffective. (See e. g. Tr. 2533–76) At times, it appeared to us that he was inattentive to the proceedings. In sum, his request for $8,580 borders on the frivolous. We award him a total compensation of $5,000, a figure entirely commensurate with the quality of his representation.

## IV

Attorney C [13] requests a total compensation of $9,325: $1,960 (98 hours at $20 per hour) for out-of-court time, and $7,365 (245½ hours at $30 per hour) for in-court time. Although in general the hours spent for out-of-court services exceed a reasonable amount of time required for each activity, Mr. C's affidavit does have, at least, the comparative advantage of particularizing with some degree of specificity work performed. Nevertheless, even in this affidavit there are numerous requests for compensation for items such as "legal research" and "organization and preparation of trial book" which are too vague to merit total compensation.

■ As far as in-court hours are concerned, we thought his performance above average. On several occasions his questioning of Government witnesses on cross-examination revealed some testimony useful to the defense. (See e. g., Tr. 1379–1424; 2423–58) Although far from exemplary, his advocacy was somewhat forceful and determined. Moreover, Mr. C did submit a request to charge. We conclude that $7,500 *in toto* is adequate compensation for services to a defendant charged in only one count.

## V

Attorney D [14] requests the sum of $10,-433: $3,233 (161.65 hours at $20 per hour)

---

13. Mr. C represented the defendant Broadnax named only in the conspiracy count.

14. Mr. D represented the defendant Peek named in the conspiracy count and one substantive count.

for out-of-court time and $7,200 (240 hours at $30 per hour) for in-court time. That portion of his affidavit dealing with out-of-court hours is saturated with vague requests for compensation. One striking example amounting to more than $1,000:

| "Legal Research and Brief Writing | Date | Hours |
|---|---|---|
| | 7/10/75 | 1 |
| | 7/11/75 | 2.5 |
| | 7/15/75 | 5 |
| | 7/17/75 | 1 |
| | 8/26/75 | 3 |
| | 8/27/75 | 4.25 |
| | 8/28/75 | 5.5 |
| | 8/29/75 | 5 |
| | 9/2/75 | 4.25 |
| | 9/4/75 | 3.75 |
| | 9/5/75 | 3.0 |
| | 11/3–4/75 | 4.4 |
| | 11/29/75 | 5.5 |
| | 12/13/75 | 3.0 " |

(D Affidavit, p.2)

█ Although Mr. D did submit a memorandum requesting a pre-trial hearing (at the conclusion of which we denied the application) and requests to charge, the Court is left unaware of what hours devoted to research and writing consisted of specifically. Consequently, we will not compensate him for a sizable portion of such hours designated. Additionally, Mr. D requests $800 for travel expenses (40 hours at $20 per hour). We find this amount to be excessive and unreasonable, and will not allow recompense therefor in full.

█ As a trial advocate, Mr. D's performance was clearly unimpressive. His cross-examination of government witnesses, both at a pre-trial hearing (11/6 Tr. 50–65) and during trial was inept. (See, e. g., Tr. 1224–57; 1841–52; 1860–63; 1895–97; 2349–75; 4835–39; 5610–25) Further, his conduct on direct examination of Peek at the hearing (11/6 Tr. 2–24; 37–42) and trial (Tr. 5472–93; 5539–42) was particularly clumsy. In our estimation, there were many shortcomings in his defense strategy and technique. In fact, we said so at the November 6th hearing:

15. At trial, Mr. E represented defendant Foster named in the conspiracy count.

"Your sincerity I again applaud. Your judgment, God forbid, I will never agree with that." (11/6 Tr. 90)

We conclude that $5,500 *in toto* is adequate.

## VI

Attorney E [15] requests the sum of $10,-582.50: $3,360 (168 hours at $20 per hour) for out-of-court time, and $7,222.50 (240¾ hours at $30 per hour) for in-court time. In his affidavit, Mr. E lists some items that are vague: "legal research and reviewing memorandum of law" (10 hours); "reviewing case file and superseding indictment" (2½ hours); reviewing transcript and some Government exhibits (4 hours); "reviewing" Government exhibit consisting of 18 pages (2½ hours); "reviewing" portions of grand jury testimony and preparing for cross-examination (16 hours). On the whole, however, the amounts requested and time spent on services are relatively specific. Accordingly, we will grant Mr. E remuneration for the majority of his out-of-court services.

█ As far as in-court hours are concerned, we believe that Mr. E is entitled to the majority of the items requested. During this seven-week trial he displayed quality adversarial techniques; he elicited important evidence on cross-examination of prosecution witnesses and raised important issues of fact for the jury. (See, e. g., Tr. 2330–48; 4480–4500) We are aware also of Mr. E's long standing at the Bar and satisfactory performance on prior occasions before us. Taking all these factors (also that his client was charged in only one count) into consideration, we have decided he is entitled to total compensation of $9,250.

## VII

█ Attorney F [16] requests the sum of $11,185: $3,820 (191 hours at $20 per hour) for out-of-court time, and $7,365 (245½ hours at $30 per hour) for in-court time. Like all the others, Mr. F's affidavit dealing

16. Mr. F represented the defendant Keno named in the conspiracy count and two substantive counts.

with out-of-court time contains some vague items, such as "legal research" (19 hours); "analysis" of indictments and "interviews." In general, however, the affidavit is sufficiently precise so that we can make an informed judgment as to the bulk of his claimed out-of-court services. As a consequence, because they are reasonable and precise, the vast majority of Mr. F's out-of-court requests are granted.

As far as Mr. F's in-court requests are concerned, the entirety of the remuneration sought is recognized. We would be remiss if we failed to single out Mr. F among all the present petitioners. From the outset of trial he was a "lead" counsel and he provided the defense and Court great assistance in that capacity. Further, as the representative of Keno, Mr. F excelled. In our estimation he conducted some of the best cross-examination of Government witnesses, elicited several telling inconsistent statements from principal prosecution witnesses and raised important fact issues for the jury. (See, e. g., Tr. 1189–1221; 1881–86; 2145–77; 2183–2214; 4563–86; 4594–4621; 4947–50) We are also aware of Mr. F's long and well-regarded standing at the Bar. Accordingly, we award him attorney's fees in the total amount of $10,500.

### VIII

In our dispositions herein we bore in mind that the Act's purpose

"was not to benefit lawyers; it was for the benefit of indigent defendants to assure their constitutional right of adequate representation by competent counsel, and to ease the burden on those lawyers who, as a public service, voluntarily and without compensation gave of their professional skill in the defense of indigents." *United States v. Mazzella*, Dkt. No. 72 Cr. 195 (S.D.N.Y. April 26, 1972) (Weinfeld, J.)

The medical profession has been doing exactly that for a very long time; the people in hospital wards continue to be treated daily and without cost by "top" medical staff (including competent assistants) in all departments.

Our awards reflect what we consider "fair and reasonable compensation" in light of the goals of the Act and the quality of services rendered. On May 17, 1976 the Chief Judge of the Second Circuit approved the fees awarded herein.

SO ORDERED.