**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Witt MARTIN and James Young,
Defendants-Appellants.**

No. 80–5146
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

Feb. 9, 1981.

---

H. Jay Stevens, Asst. Federal Public Defender, Orlando, Fla., for Young.

Jon S. Rosenberg, Orlando, Fla., for Martin.

Robert A. Leventhal, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before GODBOLD, KRAVITCH and HATCHETT, Circuit Judges.

KRAVITCH, Circuit Judge:

Appellants were convicted by a jury of armed robbery of a post office in violation of 18 U.S.C. §§ 2 and 2114.[1] On appeal they contend that the district court erred in denying their motions to suppress and that there was insufficient evidence to support the convictions. Finding no error, we AFFIRM.

*Facts*

Appellant Martin entered a post office in Lake Monroe, Florida, on October 23, 1979, and asked the postal clerk on duty, Carmen Cleek, several questions concerning money

---

1. 18 U.S.C. § 2114:

**§ 2114. Mail, money or other property of United States**

Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years.

18 U.S.C. § 2:

**§ 2. Principals**

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

orders. He then walked outside, spoke to a man sitting in a waiting car, and returned to the post office. After asking what time the post office would close, Martin left, stating, "We'll be back."

Later that afternoon, Martin and Young returned to the post office. Martin robbed Cleek of all of the money orders, stamps and cash which were behind the counter. After Martin took the property, Young took Cleek into the restroom and tied her hands and ankles with an orange rope.

Minutes after the robbery, a customer found Cleek and freed her. Cleek's description of the robbers as two black men, one of whom was wearing a silky, shiny yellow shirt, was disseminated to all mail carriers in central Florida. She also described the car that she had seen when Martin first entered the post office as creamy yellow with a badly dented right rear fender.

The day after the robbery, a letter carrier noted an automobile meeting this description in Orlando, Florida. He observed two black males in the car, and as he was watching the passenger got out and walked away. This individual was wearing a "see-through" yellow shirt and a white envelope was sticking out of his back pocket. The letter carrier reported these events to a postal inspector. When Postal Inspector McClelland arrived on the scene some ten minutes later, the car was still parked. Shortly thereafter the vehicle pulled away, followed by McClelland. As he was following this car, McClelland noticed that the trunk was tied down with an orange rope of the same color that had been used to bind Cleek. When the vehicle erratically changed lanes, McClelland radioed for police assistance. The vehicle was then stopped, and when the driver, who identified himself as John Martin, could not produce a valid driver's license, he was arrested by local authorities.

After Martin's arrest, McClelland, assisted by a sheriff's deputy, searched for the man in the yellow shirt. Upon returning to the location where the passenger had left Martin's car, they spotted him entering another vehicle on the passenger side. They stopped this vehicle and asked the individuals for identification. The man in the yellow shirt was identified as James Young. They also ascertained that the vehicle was an overdue rental car registered to someone other than either of the two individuals in the car. When contacted, the rental agent asked McClelland to hold the car until someone could come to pick it up. McClelland allowed Young and the driver to remove their possessions from the vehicle while they waited for the rental agent to arrive.

Between twenty-five and forty minutes after the call, an employee of the car rental agency arrived, took possession of the car, and gave the officer permission to search it. As a result of the search, a white envelope containing the money orders was seized. Young was placed under arrest.

*The Admission of Evidence*

Martin contends that the trial court erred in refusing to suppress fingerprints and photographs which were obtained as a result of the stop of his vehicle and his subsequent arrest. He argues that there was no probable cause to stop the car and that any evidence seized therefrom was the fruit of an illegal arrest.

█ This contention is without merit. Police may stop a vehicle and request identification on "somewhat less" than probable cause. *United States v. Allison*, 616 F.2d 779 (5th Cir. 1980); *United States v. Michel*, 588 F.2d 986 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). An investigative stop is permissible if the officer has reasonable grounds to believe that the individual is involved in criminal activity. Reasonable suspicion may exist on the collective knowledge of the police where there has been reliable communication to the officer who makes the stop, *Allison*, 616 F.2d at 782; the reasonableness of the stop must be judged on the facts known to the officer at the time of the stop. *Michel*, 588 F.2d at 998; *United States v. Rias*, 524 F.2d 118, 121 (5th Cir. 1975).

█ We conclude that the information possessed by Postal Inspector McClelland

provided him with reasonable suspicion to warrant an investigative stop. The car matched the description of the vehicle that the robbers used on the day of the robbery. Further, McClelland noticed a distinctive type of orange rope tied to the trunk; he had seen a rope of the same color used to tie the robbery victim the day before.

After Martin was stopped, he could not produce a valid driver's license. He claimed to have a New York license, but a teletype check revealed that the New York license was under suspension. Martin was then arrested by local authorities for driving with a suspended license. This arrest was based on probable cause; the fingerprints and photographs taken as the result of the valid arrest were properly admissible against Martin.[2]

 Young also challenges the stop of the vehicle in which he was riding. We find that the officers possessed sufficient facts also to warrant an investigative stop of this vehicle. The letter carrier had spotted Young leaving an automobile that matched the description of the car seen by the robbery victim. In addition, Young matched the general physical description of the second robber and was wearing a silky yellow shirt as described by Cleek. While these facts may not have been sufficient to establish probable cause to arrest, the officer did have reasonable grounds to suspect that the individual was involved in criminal activity.

 Young further contends that even if the initial stop of the vehicle was valid, his subsequent detention for up to forty minutes amounted to an arrest without probable cause. The record does not support this argument. There is no evidence that Young was detained against his will while waiting for the rental agent to arrive. The officer who stopped the vehicle testified that Young was free to leave at any time. Before the rental agent arrived, the officers permitted Young to remove any of his possessions from the car. Further, there was no interrogation of Young after the initial identification check.[3] Young was not actually placed under arrest until the search of the car revealed the stolen money orders.

Moreover, assuming arguendo that this conduct did constitute an illegal arrest, it would not taint any evidence used against Young. The officers did not search the car until the owner of the car arrived and gave them permission to search. The search of the car, therefore, was independent of Young's alleged detention and was a valid consensual search. *See Schneckcloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1975). The alleged arrest occurred outside the chain of events leading to the vehicle search. Even had Young left the scene immediately after the investigatory stop, we must assume that upon ascertaining the overdue status of the vehicle,

2. Martin's fingerprints were identified on several money orders and in the Lake Monroe Post Office.

3. *United States v. Hill*, 626 F.2d 429 (5th Cir. 1980) is distinguishable on its facts. In *Hill* this court held that, under the circumstances of that case, the scope of the intrusion upon the defendant's freedom amounted to an arrest that required probable cause. There, the defendant was stopped and questioned by a DEA agent in an airport. When the defendant refused a request to be searched, the agent asked the defendant to accompany him to an office. We held that while the initial investigatory stop may have been permissible, once the agent requested the defendant to accompany him to the office, he had effectively placed him under arrest.

Several factors distinguish this case from *Hill*. First, Young was never asked to accompany the officers to a location other than the place of the initial stop. Second, in *Hill* the court found that the purpose of the detention was for interrogation; here, Young was not interrogated during the time in question. Third, in *Hill* the court emphasized that the defendant was never informed that he was "free to go," and the circumstances indicated that he would have been physically restrained had he tried to leave; here, although Young was not told he was "free to go," there is no evidence that he could not in fact have walked away.

Moreover, in *Hill*, we held that the evidence, found on Hill's person, resulted from an illegal arrest and should have been suppressed. Here, as explained *infra* the search of the car which revealed the evidence was independent of Young's detention.

the officers would have contacted the owner, secured the car until his arrival, and obtained permission to search the car. *See United States v. Walker*, 535 F.2d 896 (5th Cir.), *cert. denied*, 429 U.S. 982, 97 S.Ct. 498, 50 L.Ed.2d 592 (1976). Indeed, the officers would have been derelict in their duty had they allowed someone who had no right to the car to drive it away.

In short, we reject the claim of both Martin and Young that evidence used against them was obtained as a result of illegal arrests. Reasonable suspicion existed to warrant the initial stop of each defendant. Neither was arrested until the officers had obtained probable cause as a result of the information gleaned from the investigatory stops. The identification evidence against Martin was obtained pursuant to a valid arrest; the money orders were seized pursuant to a valid consensual search.

*Sufficiency of the Evidence*

Both defendants contend there was insufficient evidence to support a conviction under 18 U.S.C. § 2114. Specifically, they argue there was no evidence that the person robbed had custody of the property that was stolen, and, in addition, that there was no evidence that the stolen property was owned by the United States. We reject this argument as frivolous. The robbery victim testified that at the time of the robbery she was the only employee on the premises and was in charge of the post office. There was also testimony that the stolen property belonged to the United States.

For the reasons stated above, we AFFIRM.