**UNITED STATES of America**

v.

**Carlton R. JOHNSON.**

**Crim. A. No. 80–00248–01.**

United States District Court,
District of Columbia.

Aug. 24, 1982.

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

Court-appointed trial counsel for the defendant has submitted a voucher pursuant

to the Criminal Justice Act of 1964[1] seeking $9,249.35 as compensation. By the terms of the Act, that much is not allowable without prior judicial certification and approval.[2] The voucher lists 83.8 hours spent in court, a statistic unchallenged, but 329.6 hours out of court, of which 247.5 hours were devoted to legal research and brief-writing.[3] The District Judge deemed this latter figure, though concededly accurate, excessive by 165 hours,[4] and certified $7,500 as fair compensation.[5] The matter is now before me for approval.[6]

## I

The Criminal Justice Act is the congressional effort to give meaning to the Sixth Amendment[7] right to counsel.[8] The Act pledges adequate and effective representation to indigent defendants,[9] and modest remuneration to counsel who serve them.[10] Compensation for district court representation may go as high as $1,000 for each attorney in a case in which one or more felonies are charged, and $400 for each attorney in a case in which only misdemeanors are charged.[11] There is, however, provision for waiver of these ceilings in cases involving extended or complex representation when necessary to provide fair compensation.[12]

Here, the District Judge certified a need for excess compensation,[13] but in an

1. Pub.L. No. 88-455, 78 Stat. 552 (1964), as amended, 18 U.S.C. § 3006A (1976) [hereinafter cited in current form as codified].

2. 18 U.S.C. § 3006A(d)(3), quoted *infra* at note 14.

3. The Act sets hourly rates for compensation: [T]he appointed attorney shall ... be compensated at a rate not exceeding $30 per hour for time expended in court or before a United States magistrate and $20 per hour for time reasonably expended out of court, or such other hourly rate, fixed by the Judicial Council of the Circuit, not to exceed the minimum hourly scale established by a bar association for similar services rendered in the district. *Id.* § 3006A(d)(1). The Judicial Council for this circuit has not established alternative hourly rates, and counsel based his claim on the rates set forth in the statute. See also *United States v. Hunter,* 394 F.Supp. 997, 1001 (D.D.C.1975) (Bazelon, C.J., D.C.Cir.).

4. *United States v. Johnson,* Crim. No. 80–248 (D.D.C. Nov. 20, 1981) (memorandum) at 2–3 [hereinafter cited as Memorandum].

5. *Id.* at 3.

6. See 18 U.S.C. § 3006A(d)(3) (1976), quoted *infra* at note 14 (award of compensation in excess of statutory maximum must be approved by chief judge of circuit).

7. U.S. Const., amend. VI.

8. See, *e.g.,* H.Rep. No. 1079, 88th Cong., 2d Sess. 5 (1964) (bill is designed to promote the cause of criminal justice by providing for representation of criminal defendants financially unable to obtain adequate defense); 110 Cong. Rec. 444 (1964) (remarks of Representative Moore) (bill will serve fundamental right of representation by counsel); *id.* at 445 (remarks of Representative Moore) (citing Sixth Amendment in argument supporting bill); *id.* at 448 (remarks of Representative Celler) (same); *id.* at 453 (remarks of Representative Poff) (favors bill because it is consistent with Supreme Court decisions implementing constitutional right to counsel); accord, *United States v. O'Clair,* 451 F.2d 485, 486 (1st Cir. 1971), *cert. denied,* 409 U.S. 986, 93 S.Ct. 339, 34 L.Ed.2d 252 (1972); *United States v. Durant,* 545 F.2d 823, 827 (2d Cir. 1976); *Miranda v. United States,* 455 F.2d 402, 404 (2d Cir.), supplemented 458 F.2d 1179, *cert. denied,* 409 U.S. 874, 93 S.Ct. 207, 34 L.Ed.2d 126 (1972); *United States v. Tutino,* 419 F.Supp. 246, 248 (S.D.N.Y.1976).

9. 18 U.S.C. § 3006A(a)–(c) (1976).

10. *Id.* § 3006A(d)(1)–(3).

11. *Id.* § 3006A(d)(2). As originally passed, the Act imposed compensation limits of $300 for misdemeanor cases and $500 for felony cases. See Pub.L. No. 88–455, 78 Stat. 552, 553 (1964) (current version at 18 U.S.C. § 3006A(d)(2) (1976)). In response to criticism of the compensation provisions, Congress amended the Act in 1970 and established the present ceilings. See Pub.L. No. 91–447, 84 Stat. 916, 917 (1970); *United States v. Bailey,* 189 U.S.App. D.C. 206, 208–209, 581 F.2d 984, 986–987 (1978).

12. 18 U.S.C. § 3006A(d)(3) (1976). This provision also differs from its counterpart in the original Act. Compare *id.* with Pub.L. No. 88–455, 78 Stat. 552, 553 (1964) (payment in excess of stated limits available in "extraordinary circumstances" when necessary to "provide fair compensation for protracted representation").

13. See 18 U.S.C. § 3006A(d)(2) (1976) ($1,000 maximum compensation for felony cases); note 6 *supra* and accompanying text.

amount considerably less than that requested by counsel. Consequently, I am confronted at the threshold by the question whether as chief judge I can "approve" compensation at a figure higher than that certified. The only section of the Act at all relevant provides for payment of excess compensation.

> whenever the court in which the representation was rendered, . . . certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the chief judge of the circuit.[14]

This statutory scheme supplies the answer to the question posed. An award of excess compensation is a two-tiered process. First, the initiating court—after determining that the representation was either extended or complex, and that fair remuneration requires an over-the-ceiling allowance—must certify to the chief judge the particular sum deemed necessary to achieve that end.[15] This certification, by the express terms of the Act, is wholly the business of "the court in which the representation was rendered."[16] Once the certification is made, the process moves into its

second stage: the chief judge must determine whether approval for payment is warranted.[17] This, as the Act makes equally plain, is entirely the responsibility of the chief judge.[18]

Thus certification and approval, though both essential, are distinct functions, to be performed independently by different judicial officers. More importantly, as the cases have recognized, these functions are as self-contained as they are mutually exclusive.[19] The certifying judge[20] has no role in approval, nor the chief judge in certification,[21] and it follows inescapably that the amount of excess compensation certified as necessary to provide fair compensation operates as the upper limit of any approval. As already it has aptly been observed, the chief judge's "only function under the act is to approve or disapprove, in whole or in part, the determination made by the trial judge,"[22] and "[u]nless the Court certified a greater amount, the chief judge has no power to approve a larger payment."[23] I conclude, then, that my approval authority here is confined to the amount of excess compensation certified by the District Judge.[24]

---

14. 18 U.S.C. § 3006A(d)(3) (1976).

15. See text *supra* at note 14; Judicial Conference of the United States, Guidelines for the Administration of the Criminal Justice Act ¶ 2.22B (as amended Sept. 22, 1978) [hereinafter cited as Judicial Conference Guidelines].

16. See text *supra* at note 14; *United States v. Lynch*, 690 F.2d 213 (D.C.Cir.1982); *United States v. Smith*, 633 F.2d 739, 740–741 (7th Cir. 1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2047, 68 L.Ed.2d 349 (1981); *United States v. Durka*, 490 F.2d 478, 480 (7th Cir. 1973).

17. See text *supra* at note 14.

18. See text *supra* at note 14.

19. *United States v. Lynch, supra* note 16, at 215 (chief judge cannot increase amount certified by circuit judge as excess compensation); *United States v. Smith, supra* note 16, 633 F.2d at 740–741 (court of appeals cannot review district judge's action in refusing to certify case as extended or complex, or in fixing amount of compensation); *United States v. D'Andrea*, 612

F.2d 1386, 1387–1388 (7th Cir. 1980) (court of appeals cannot review chief judge's action on certification of excess compensation).

20. Certification may involve more than a single judge—for example, a panel of appellate judges. See *United States v. Lynch, supra* note 16, at 214.

21. *Id.*, at 215. I intimate no position on whether a certification by a single district judge is reviewable or alterable by some process within the district court. Compare *id.* at 214.

22. *United States v. Thompson*, 361 F.Supp. 879, 886 (D.D.C.1973) (Bazelon, C.J., D.C.Cir.).

23. *United States v. D'Andrea, supra* note 19, 612 F.2d at 1388.

24. This, of course, is not to suggest that the chief judge lacks power to reduce the amount of excess compensation certified by the initiating judge or judges. The Act clearly envisions

## II

Mindful of this limitation, I turn to examine both the claim and the certification of excess compensation here. The defendant was charged in a seven-count indictment with kidnapping,[25] kidnapping while armed,[26] armed robbery,[27] interference with commerce by robbery,[28] and various lesser included offenses.[29] Counsel filed extensive pre-trial motions to suppress statements, identifications, and other evidence,[30] and the District Judge held three days of hearings on these and other motions.[31] All motions were denied, but none, in the presiding judge's view, was frivolous.[32] The ensuing trial, which culminated in convictions, lasted five days.[33] Counsel also submitted post-trial motions,[34] but the convictions stood, and were affirmed on appeal without opinion.[35]

■ As noted earlier, the Act allows for excess compensation "for extended or complex representation" when necessary to provide "fair compensation."[36] This critical terminology has been interpreted authoritatively. "Complex representation" is that involving unusual legal or factual issues requiring "the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case."[37] "Extended representation" is similarly defined as that demanding "more time . . . for total processing than the average case."[38]

While the representation need not be both extended and complex,[39] the District Judge found both elements present,[40] a determination in which I concur. The motions hearings and the trial alone consumed almost two full weeks of counsel's time.[41] Even as reduced by the judge to time profitably expended, counsel put in 248.4 hours on the case.[42] The legal issues presented at the motions stage were far from routine;[43]

that the chief judge will act as an overseer, and will in that capacity ensure both fairness in individual cases and consistency throughout all cases. Authority to reduce a certified award of excess compensation is evident in this scheme. See *United States v. D'Andrea, supra* note 19, 612 F.2d at 1387; *United States v. Thompson, supra* note 22, 361 F.Supp. at 886.

25. 18 U.S.C. § 1201 (1976 & Supp. III 1979).

26. D.C.Code Ann. §§ 22–2101 –3202 (1981).

27. *Id.* §§ 22 –2901–3202.

28. 18 U.S.C. § 1951 (1976).

29. *Id.* § 924(c)(2) (carrying a firearm during the commission of a felony); *id.* § 1202(a)(1) app. (possession of a pistol by a felon); D.C. Code Ann. § 22–3204 (1981) (carrying a pistol without a license).

30. Memorandum, *supra* note 4, at 1.

31. *Id.*

32. *Id.*

33. *Id.*

34. See Defendant's Motion for New Trial (filed Aug. 25, 1980), *United States v. Johnson, supra* note 4; Defendant's Motion for Judgment of Acquittal After Discharge of the Jury (filed Aug. 25, 1980), *United States v. Johnson, supra* note 4.

35. *United States v. Johnson,* 211 U.S.App.D.C. 312, 656 F.2d 901 (D.C.Cir.1981) (order).

36. See text *supra* at note 14.

37. Judicial Conference Guidelines, *supra* note 15, ¶ 2.22B1; see also *United States v. Bailey, supra* note 11, 189 U.S.App.D.C. at 211, 581 F.2d at 989; *United States v. Hunter, supra* note 3, 361 F.Supp. at 885.

38. Judicial Conference Guidelines, *supra* note 15, at ¶ 2.22B1; *United States v. Hunter, supra* note 3, 361 F.Supp. at 885. As to ascertainment of "fair compensation," see note 46 *infra* and accompanying text.

39. See text *supra* at note 14.

40. Memorandum, *supra* note 4, at 2.

41. See text *supra* at notes 30–33.

42. See text *supra* at notes 3–4.

43. Memorandum, *supra* note 4, at 1. For example, one motion addressed the question of implied authority of the titleholder of the house occupied by her daughter and the defendant, to consent to a search thereof. *Id.; cf. United States v. Matlock,* 415 U.S. 164, 169, 94 S.Ct. 988, 992, 39 L.Ed.2d 242, 248 (1973); *United States v. Martin,* 636 F.2d 974, 976–978 (5th Cir.), *cert. denied,* 451 U.S. 917, 101 S.Ct. 1995, 68 L.Ed.2d 309 (1981); *United States v. Walker,* 638 F.2d 1147, 1149 (8th Cir. 1981).

indeed, on certification the judge expressly characterized many of them as "complex."[44] I am therefore satisfied that the representation was both extended and complex.

■■ The Act also requires that excess payment be necessary to provide "fair compensation."[45] Important illumination of the meaning of this elusive phrase is derived from the admonition to examine, among other factors, the manner in which counsel's duties were executed, and the "knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel."[46] Because first-hand observation of counsel's performance is obviously crucial to proper assessment of these elements,[47] the evaluation given them by the presiding judge is entitled to considerable deference.[48] Here the judge described counsel as "well prepared," and declared that he had "diligently pursued his client's case" and "afforded [the defendant] excellent representation."[49] I agree with the judge that excess compensation is essential to fair remuneration.

I conclude, then, that the claim as certified is "for extended or complex representation," and that excess compensation is "necessary to provide fair compensation."[50] The allowance of $7,500 is therefore approved.

---

44. See Memorandum, *supra* note 4, at 1.

45. See text *supra* at note 14. This requirement was in the Act in its original form. See Pub.L. No. 88–455, 78 Stat. 552, 553 (1964) (current version at 18 U.S.C. § 3006A(d)(3) (1976)).

46. Judicial Conference Guidelines, *supra* note 15, ¶ 2.22B1. In full text, this portion of the guideline exhorts consideration of
    responsibilities involved measured by the magnitude and importance of the case; manner in which duties were performed; knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; . nature of counsel's practice and injury thereto; any extraordinary pressure of time or

other factors under which services were rendered; any other circumstances relevant and material to a determination of a fair and reasonable fee.

47. See *United States v. Hunter, supra* note 3, 394 F.Supp. at 1002; *United States v. Thompson, supra* note 22, 361 F.Supp. at 886.

48. See *United States v. Hunter, supra* note 3, 394 F.Supp. at 1002; *United States v. Thompson, supra* note 22, 361 F.Supp. at 886.

49. Memorandum, *supra* note 4, at 1–2.

50. See text *supra* at note 14.