GEORGE O. EDGERLY vs. COMMONWEALTH
(application of counsel for approval of compensation).

Suffolk.  September 13, 1979. — November 6, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Attorney at Law,* Compensation.

Discussion of fees allowed to counsel appointed to represent indigent de-
fendants charged with crime. [185-188]
This court affirmed, as within the discretion of a single justice, his order
reducing to $2,500 a request by an attorney, appointed to represent a
defendant convicted in 1976 of larceny, for the allowance of a fee of
$8,882.50, based on 11.75 hours in court and 426.5 hours preparation
in fact expended in connection with the defendant's application for a
stay of execution of sentence pending appeal and with the appeal,
where it appeared that the single justice found that "the hours spent in
preparation exceeded the amount reasonably necessary to prepare the
defendant's appeal and petition for a stay," that there was much
repetition in the documents reviewed, and that the points decided by
the Appeals Court were largely commonplace and did not demand the
full time used for preparation. [188-189]

APPLICATION for an order authorizing payment of counsel
fees and expenses filed in the Supreme Judicial Court for the
county of Suffolk on August 28, 1978.
The proceeding was heard by *Liacos,* J.
*J. Russell Hodgdon* for the plaintiff.
*James W. Sahakian,* Assistant District Attorney, for the
Commonwealth.
KAPLAN, J.  The attorney applying for compensation
herein served as retained counsel[1] in the trial in Superior
Court, Middlesex County, of one George O. Edgerly for

_____
[1] See note 4, *infra.*

larceny of property over $100 in value.[2]   On April 1, 1976, a jury found Edgerly guilty of the offense charged, and the trial judge sentenced him to three to five years' imprisonment at the Massachusetts Correctional Institution at Walpole.   When the judge denied counsel's application on Edgerly's behalf for a stay of execution pending appeal, counsel on April 6, 1976, applied for the same relief to a single justice of this court.   The petition was provisionally denied, the trial transcript being unavailable.   Counsel later moved for reconsideration, and asserting that Edgerly was indigent, requested appointment to pursue the stay and conduct the appeal from the judgment of conviction.   Subsequently the single justice made the appointment, effective as of April 6, 1976.   He later granted a stay of execution conditioned, however, on Edgerly's securing his release from confinement on the various charges, State and Federal, then pending against him,[3] and conditioned also on his complying with any order for bail that might be fixed by the Superior Court in connection with the stay in the instant case. Application for admission to such bail was then made to a judge of the Superior Court, who denied it without prejudice to renewal if Edgerly could secure release on the other charges.   Counsel then proceeded to handle the appeal on the merits.   The Appeals Court affirmed the conviction (*Commonwealth* v. *Edgerly*, 6 Mass. App. Ct. 241 [1978])

---

[2] Edgerly, formerly director of service at a Chevrolet automobile dealership, was charged with masterminding a scheme whereby repair order forms submitted over his signature to the General Motors Corporation for partial reimbursement were falsified with claims for work not actually performed.

[3] At the time the petition for stay was conditionally granted, bail had been set for Edgerly as follows: $10,000 on an indictment pending in Superior Court, Middlesex County, charging conspiracy to steal more than $100; $100,000 on a murder charge in Superior Court, Essex County; $100,000 on charges of rape, assault with intent to commit rape, and unnatural acts in Superior Court, Middlesex County; and $100,000 on charges of conspiracy to defraud by use of the mails and larceny in the United States District Court for the District of Massachusetts.

and this court denied further appellate review (375 Mass. 789 [1978]).

On August 28, 1978, counsel applied to a single justice of this court for an order authorizing payment of fees for his legal services since April 1, 1976, and for his incident expenses.[4] Expenses of $277.49 were allowed as requested, but a request for fees of $8,882.50 (a claim of 11.75 hours in court at $30 an hour, and 426.5 hours of preparation at $20 an hour) was reduced and allowed at $2,500 (at the stated rates, this would compensate for about 113 hours of preparation). Counsel appeals[5] from the order embodying this determination, contending that the requested fees should have been allowed.[6] We have received a brief and heard argument on the part of the assistant district attorney for Middlesex County (who, on notice, had attended the fee application hearing before the single justice), urging that the order was not unreasonable, and should be affirmed. We agree, and affirm the order.

It is among the high professional responsibilities of members of the Bar at any necessary personal sacrifice to see to the furnishing of competent legal assistance to persons who need but cannot afford it, and the duty is accentuated with regard to indigents charged with crime. See *Abodeely* v. *Worcester*, 352 Mass. 719, 722-723 (1967); *Powell* v. *Alabama*, 287 U.S. 45, 73 (1932); ABA Code of Professional Responsibility and Canons of Judicial Ethics, Ethical Consideration (EC) 2-25; S.J.C. Rule 3:22 (2), 359 Mass. 797 (1972). The volunteering by attorneys of their free or low-

---

[4] The trial judge had ruled that Edgerly was not indigent. (In fact counsel received some $6,433 from Edgerly, but it was applied to counsel's representation of him in a related murder charge.) Counsel accompanied his application to the single justice for compensation for the appellate work with an application for appointment nunc pro tunc as trial counsel, and in that connection sought fees of $11,700. This latter application is pending in the county court.

[5] Technically, Edgerly is the appellant.

[6] In the alternative counsel asks that the case be remanded to the single justice for further hearings and more detailed findings of fact.

cost services is traditional; and it was said in *Abodeely*, a case involving representation of an indigent charged with a noncapital crime, that in the absence of statute a court might well appoint counsel and require him or her to act without fee. *Id.* at 721-722. Authority to award compensation to appointed counsel in noncapital cases was found in the general terms of G. L. c. 213, § 8,[7] but we noted that counsel must expect modest remuneration, below the level they might set and obtain in the open market for work of comparable difficulty. *Id.* at 724.[8] This followed from the nature of the duty undertaken as one of public service, and from the fact that payment must come from a limited public treasury. See *United States* v. *Thompson*, 361 F. Supp. 879, 887 (D.D.C. 1973), vacated in part, aff'd in part, without opinion sub nom. *United States* v. *Boggins*, 489 F.2d 1273 (1974); *Lindh* v. *O'Hara*, 325 A.2d 84, 92 (Del. 1974). Further, the fees to appointed counsel should bear some, even if not exact, comparison with the cost to the public of providing the same service through State supported defender organizations or similar arrangements which are, and should be, the usual recourse for securing counsel for the indigent.[9] Of course compensation should be denied for work not reasonably required for the efficient handling of a matter.[10]

---

[7] The statute read: "The courts shall, respectively, receive, examine and allow accounts for services and expenses incident to their sittings in the several counties and order payment thereof out of the respective county treasuries." Effective July 1, 1978, the statute was amended to cast the burden of payment on the Commonwealth. St. 1978, c. 478, § 127.

General Laws c. 277, §§ 47 and 55, have long provided for the appointment of attorneys to defend indigents charged with murder, and for their compensation from public funds. See note 16, *infra*.

[8] See also *United States* v. *Hildebrandt*, 420 F. Supp. 476, 478 (S.D.N.Y. 1975); *Lindh* v. *O'Hara*, 325 A.2d 84, 92 (Del. 1974); *Bennett* v. *Davis County*, 26 Utah 2d 225, 227 (1971).

[9] See *Abodeely* v. *Worcester*, 352 Mass. 719, 724 (1967); Rule 53 (3) of the Superior Court, as amended (1978).

[10] See *Serlin* v. *Rotman*, 371 Mass. 449, 451 (1976) (compensation for services rendered by retained counsel based on number of "useful" hours worked); *United States* v. *Bailey*, 581 F.2d 984, 987 (D.C. Cir. 1978);

Rule 53 of the Superior Court exemplifies these generalities. As to services at the trial level on behalf of a defendant charged with an offense less than murder, the court "may" allow an appointed attorney compensation at rates (we refer to those in force prior to July 1, 1978) [11] not to exceed $30 an hour for time in court and $20 an hour for other time "reasonably" expended with a maximum of one hour for any one court appearance and, except when otherwise authorized by the court in advance, a maximum of five hours for preparation or other services out of court; nor may the court allow a total of more than $1,000 for a felony or over $300 for a misdemeanor, except that, where trial lasts more than five days, higher compensation may be granted in extraordinary circumstances upon the court's certificate.

As to compensation for services on appeal, rule 53 states merely that it "shall be allowed in this court in such amount as the Appeals Court or the Supreme Judicial Court may order." In passing pursuant to G. L. c. 213, § 8, on applications for fees for appellate work, this court has customarily looked by analogy to the rates set as maxima by rule 53 (and counsel's application herein was based on those maximum figures), but of course we are not bound by the particular terms of that rule. In a broader sense, we recognize that in adjudging compensation of appointed counsel for appellate work, as with fee determinations generally, a number of judgmental factors, starting with the "reasonableness" of the time expended, may enter as variables in

---

*Lindh* v. *O'Hara, supra* at 93; ABA Project on Standards for Criminal Justice, Standards Relating to Providing Defense Services § 2.4, at 30-32 (Approved Draft 1968).

[11] On July 1, 1978, the rule was revised to raise the rates to $35 an hour for time in court and $25 an hour for other time. The corresponding rates for representation of indigents charged in Federal court are currently set by statute at $30 an hour in-court time and $20 an hour out-of-court without distinction between trial and appellate work. 18 U.S.C. § 3006A(d)(1) (1976).

relation to the nature of the assignment and its accomplishment.[12]

As the decisions of a single justice in these fee matters involve such exercises of judgment, they are entitled to a large measure of respect on full bench review, and will be upheld except upon a demonstration of abuse of discretion. See *Serlin* v. *Rotman*, 371 Mass. 449, 451 (1976); *Smith* v. *Smith*, 5 Mass. App. Ct. 874 (1977); *United States* v. *Hunter*, 394 F. Supp. 997, 1001-1002 (D.D.C. 1975); *State* v. *Zimmer*, 198 Kan. 479, 506, cert. denied, 389 U.S. 933 (1967); *Baer* v. *O'Keefe*, 235 N.W.2d 885, 891 (N.D. 1975). We do not understand the appellant to contest the propriety of this standard of review.[13]

In the present case the single justice, basing his decision, as he wrote, on "a thorough review of all documents submitted [by the appellant] on behalf of the defendant [Edgerly]" in the appellate proceedings following the conviction, found that "the hours spent in preparation exceeded the amount reasonably necessary to prepare the defendant's appeal and petition for a stay." We, too, have reviewed those documents in their legal and practical settings. The time devoted to the stay (some 140 hours) must undoubtedly be thought fulsome, even disregarding any quixotic element in the entire quest.[14] There was much repetition in the papers. Although a variety of issues were raised on the appeal to the Appeals Court, and the opinion rendered there

---

[12] See generally *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933); *United States* v. *Tutino*, 419 F. Supp. 246, 249 (S.D.N.Y. 1976); Berger, Court Awarded Attorneys' Fees: What is "Reasonable"?, 126 U. Pa. L. Rev. 281 (1977).

[13] We may add that if an application to a single justice for settlement of fees were to be viewed as resembling a civil "action" tried without a jury within Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), it would appear plausible, in the light of the discretionary range involved, to regard the determination as in the nature of a "finding of fact" (as opposed to a "conclusion of law") which is not to be set aside "unless clearly erroneous." (For the relevance of the civil rules to single justice matters, see Mass. R. Civ. P. 1, 365 Mass. 730 [1974].)

[14] See note 3, *supra.*

was necessarily rather lengthy, the points were largely commonplace and did not demand the full time (approximately 230 hours) used for preparation.[15]  The Justices of the present quorum, had they severally sat as single justices on this matter, might well have differed in the amounts they allowed, but we are unanimous in thinking that the figure actually set and objected to was within the bounds of reasonable discretion.[16]

In affirming, we accept, as did, apparently, the single justice, that the time claimed was in fact expended, and we do not derogate in the least from the competence or good faith of counsel.  Those efforts for which counsel has been denied compensation were a mark of his industrious care, which in itself deserves commendation, but they should be viewed as a beneficent sacrifice on his part, rather than as a basis for a charge to the Commonwealth.  It has been argued that too parsimonious an attitude toward compensation of court-appointed attorneys may interfere with the Sixth Amendment rights of indigents to legal advice, *United States* v. *Bailey,* 581 F.2d 984, 988-989 (D.C. Cir. 1978); *United States* v. *Hunter, supra* at 1000, but the present decision does not betoken such an attitude, nor are we prepared to believe that the prospect of a careful screening of applications for fees will have the effect of deterring appointed attorneys from the faithful and full discharge of their responsibilities.

*Order affirmed.*

---

[15] In affirming Edgerly's conviction, the Appeals Court observed that "[w]hile we do not fault aggressive representation, we do caution against argument of frivolous or contrived issues."  6 Mass. App. Ct. 241, 246 (1978).

[16] It may be instructive to note that for murder trials rule 53 (2) of the Superior Court, as amended (1977), normally limits compensation for all trial and appellate work done above the District Court level to $2,500, plus $100 for expenses for each trial.